UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

WESTCHESTER FIRE INSURANCE COMPANY,
a Pennsylvania corporation,

      Plaintiff,

    v.

PIONEER CONSTRUCTION MANAGEMENT
SERVICES, INC., a Florida corporation, and
DYAN RUEL MILES, an individual,

      Defendants.

_____/

## COMPLAINT

Plaintiff, Westchester Fire Insurance Co., a Pennsylvania Corporation ("Westchester" or "Surety"), sues PIONEER CONSTRUCTION MANAGEMENT SERVICES, INC., a Florida corporation ("Pioneer Construction") and DYAN RUEL MILES, an individual ("Miles"), (hereafter collectively, "Indemnitors"), and alleges as follows:

### JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, on the basis of diversity of jurisdiction with an amount in controversy over $75,000.00, excluding costs, attorneys' fees, and interest.

## VENUE

2.      Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 18 U.S.C. §1965, as all defendants reside, are found, have an agent, or transact affairs within the Southern District of Florida.

## PARTIES

3.      This is an action for damages in an amount in excess of $75,000.00, exclusive of costs, attorneys' fees, and pre and post-judgement interest.

4.      Westchester is, and at all relevant times was a corporation existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania, 19106. Furthermore, Westchester is authorized and qualified to conduct surety business.

5.       Pioneer Construction is, and at all relevant times was a corporation organized and existing under the laws of the state of Florida, with its last known principal place of business located at 3711 SW 47th Avenue, #203, Davie, Florida. It is currently an active corporation conducting business through its last known officer, Dyan R. Miles.

6.      Miles is an individual residing at 5713 Hollywood Boulevard, Hollywood, Florida.

7.      All conditions precedent to the filing of this action have been satisfied or are hereby waived.

## The Indemnity Agreement

8.      Pioneer Construction requested Westchester to issue performance and payment bonds in connection with various construction projects in the State of Florida, including in Broward and Miami-Dade Counties.

9.      Prior to issuing any performance and payment bonds to Pioneer Construction, Westchester required a promise of indemnity and hold harmless from Pioneer Construction and Miles, jointly and severally.

10.      Accordingly, on or about February 17, 2012, Pioneer Construction and Miles jointly and severally, executed and delivered an Indemnity Agreement in favor of Westchester. (hereafter, "Indemnity Agreement"). A copy of the Indemnity Agreement is attached as **Exhibit A-1, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

11.      Pursuant to the Indemnity Agreement, Westchester received, among other things, the written promise of Pioneer Construction and Miles, to jointly and severally indemnify and hold Westchester harmless from any and all loss, claims, and expenses that Westchester might sustain as a consequence of executing and issuing payment and performance bonds on behalf of Principal, Pioneer Construction. In return, Westchester agreed to issue payment and performance bonds.  The Indemnity Agreement specifically states that it is a continuing agreement to remain in place until terminated pursuant to its terms. See Indemnity Agreement, Para. 31, **Exhibit A-1**, **to Affidavit of Melissa Rice, attached hereto as Exhibit A**.

12.      In particular, the Third Paragraph contains the Indemnity and Hold Harmless clause of the Indemnity Agreement, and provides in relevant part:

> PRINCIPAL(s) and INDEMNITOR(s) shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which the SURETY may sustain or incur by reason of or in consequence of the:
>
> A.  Execution or procurement of the execution of Bond(s);

B. Failure by the PRINCIPAL(s) or INDEMNITOR(s) to perform or comply with any of the covenants or conditions of this AGREEMENT;

C. Any Event of Default herein;

D. Enforcement of any covenant of this AGREEMENT;

E. Performance of any investigation, attempt or attainment of any release in connection with any BOND(s) or any loss or unpaid premium in connection with any BONDS(s);

F. Prosecution or defense of any action or claim in connection with any BOND(s), whether SURETY, at its own discretion, elects to employ counsel of its own selection or permits or requires PRINCIPAL(s) or INDEMNITOR(s) to make arrangements for SURETY's legal representation; and

G. Attempt to recover losses or expenses paid or incurred in connection with this AGREEMENT, CONTRACT(s) and/or BOND(s).

13. "EVENT OF DEFAULT" is defined in the Indemnity Agreement as: [A]ny one or more of the following:

A. Any notice of default by an obligee on any BOND(s) due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any CONTRACT or obligation contained therein or in the BOND(s) itself, whether actual or alleged;

B. Any failure, delay, refusal, or inability of PRINCIPAL(s) to pay claims, bills or other indebtedness incurred in, or in connection with the performance of any CONTRACT;

C. The failure to perform, or comply with the terms, covenants or obligations in this AGREEMENT;

D. The failure to pay or discharge, when due, all indebtedness of PRINCIPAL(s) and/or INDEMNITOR(s) to SURETY;

. . .

H. In the event that CONTRACTS(s), or any portion thereof, relates to the development of real property or construction of improvements upon real property: (1) the failure of PRINCIPALS(s) to pay for labor and materials ordered or sued in connection with such development or construction of improvements; (ii) the diversion or non-use by PRINCIPAL(s) of loan funds, equity funds or materials intended by any lender, equity contributor or supplier of such funds or materials to be used and which are needed to perform the CONTRACT(s); (iii) the voluntary or involuntary cessation or suspension of work required to be performed by PRINCIPAL(s) in connection with the CONTRACT(s);

4

. . .

K. The occurrence of any event other than as specified in A through J herein which, in the SURETY's sole opinion, may expose SURETY to loss, cost or expense including, but not limited to, a material adverse change in the financial condition of the PRINCIPAL(s) and/or INDEMNITOR(s).

14.    Furthermore, the Indemnity and Hold Harmless clause of the Indemnity Agreement provides that payment to SURETY by the PRINCIPAL(s) and the INDEMNITOR(s) shall be made:

> [A]s soon as liability exists or is asserted against SURETY, whether or not SURETY shall have made any payments therefore.  Such payment shall be equal to whatever amount SURETY, in its judgment, shall deem sufficient to protect it from loss.  SURETY shall have the right to use the payment or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT.
>
> In the event of payment by SURETY, SURETY shall be entitled in any accounting with PRINCIPAL(s) and/or INDEMNITOR(s) to be reimbursed for any and all disbursements made by it in good faith in and about the matters contemplated by this AGREEMENT under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed.  Vouchers or other such payments made by SURETY shall be prima facie evidence of the fact and amount of liability to SURETY.  PRINCIPAL(s) and INDEMNITOR(s) shall pay to SURETY interest on all disbursements made by SURETY at the maximum rate permitted by law calculated from the date of each disbursement. (emphasis supplied)

**Bond K09007945 Issued Pursuant to the Indemnity Agreement**

15.    In reliance on the Indemnitors' execution of the Indemnity Agreement, Westchester issued various Performance and Payment Bonds on behalf of Pioneer Construction.

16.    On or around May 30, 2014, under the terms of the Indemnity Agreement, Westchester issued a Performance and Payment Bond in the amount of $1,500,000.00 (Bond No. K09007945), to Pioneer Construction, as bond principal, and Broward County Board of County Commissioners as obligee  ("Bond 7945"). A copy of Bond 7945 is attached as **Exhibit A-2, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

17.    Bond 7945 guaranteed the payment and construction performance of Pioneer Construction for certain construction projects, requested by Broward County including construction improvements at: (1)  Tree Tops Park in the city of Davie, Florida (the "Tree Tops Project,"); (2) the North Broward Judicial Cooling Tower Project ("Judicial Tower Project"); and (3) the Hollywood Library in Hollywood, Florida (the "Hollywood Library Project") .

**Bond K09263974 Issued Pursuant to the Indemnity Agreement**

18.    On or around September 16, 2015, Westchester, pursuant to the terms of the Indemnity Agreement, issued Public Construction Payment Bond and Performance Guarantee Bond No. K09263974, on behalf of Principal, Pioneer Construction, in the amount of $882,491.00 (hereafter "Bond 3974").   A copy of Bond 3974 is attached as **Exhibit A-3, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

19.    Bond 3974, guaranteed the payment and construction performance of Pioneer Construction to the School Board of Miami-Dade County (as obligee), on a project described as the Irving & Beatrice Peskoe K-8 Center Renovation in Miami-Dade County (the "Peskoe Project"), pursuant to a contract executed on September 8, 2015. See **Exhibit A-3, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

**The Claims and Demands for Payment**

20.     This claim arises out of Pioneer Construction's default on Bond 3974 and Bond 7945 (hereafter collectively the Bonds"). In particular, Pioneer Construction failed to pay various subcontractors on four construction projects supported by the Bonds: Tree Tops Project, Judicial Tower Project, the Hollywood Library Project, and the Peskoe Project.

21.     Claims or demands for payment have since been made by subcontractors against Westchester under the terms of the Bonds. Specifically, to date, the following claims have been asserted against the Bonds (hereafter collectively the "Claims"):

|   | | |
|---|---|---|
| a. | Johnson Controls<br>Tree Tops Project<br>Bond  7945 | $81,582.00 |
| b. | Johnson Controls<br>Judicial Tower Project<br>Bond 7945 | $32,504.50 |
| c. | Daikin Applied America's Inc.<br>Hollywood Library Project<br>Bond 7945 | $63,895.89 |
| d. | Trane<br>Peskoe Project<br>Bond 3974 | $17,736.07 |
| e. | Marmich<br>Peskoe Project<br>Bond 3974 | $32,691.52 |
| | **Total:** | **$228,409.98** |

**Marmich/Train Claim -Peskoe Project - Bond 3974**

22.     On February 16, 2017, Marmich Air Conditioning Inc. ("Marmich"), a subcontractor on the Peskoe Project, executed a Notice of Non-Payment for labor and materials in the amount of $44,761.35, provided under an order given by Pioneer Construction. (hereafter the "Marmich Claim")  A true and accurate copy is attached as part of the **Marmich/Trane Claim, Composite Exhibit A-4, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

23.     Marmich subsequently provided Westchester with a proof of claim for the non-payment of labor and materials ("Marmich Proof of Claim"). A true and accurate copy dated March 8, 2017, is attached as part of the **Marmich/Trane Claim, Composite Exhibit A-4, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**  The Marmich Proof of Claim included a claim by Trane U.S. ("Trane"), a subcontractor to Marmich which provided services and materials in the amount of $18,846.07 ("Trane Claim"). **Marmich/Trane Claim, Composite Exhibit A-4, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

24.     Chubb, as adjuster for the claim, reviewed the claims file, and after conducting a due investigation, determined the Marmich and Trane Claims were valid and approved and paid the Marmich Claim on behalf of Pioneer Construction, in the amount of $32,691.52, and the Trane Claim in the amount of $17,736.07.  True and accurate copies of the checks are attached as part of the **Marmich/Trane Claim, Composite Exhibit A-4, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

25.     Accordingly, on June 20, 2017, Marmich executed a Final Waiver Release and Affidavit of Payment on the claim in the amount of $32,691.52.  A true and accurate

copy is attached as part of the **Marmich/Trane Claim**, **Composite Exhibit A-4, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

26.      And similarly, on June 20, 2017, Trane U.S., Inc., executed its Final Waiver and Release and Affidavit of Payment on the claim in the amount of $17,736.07.   A true and accurate copy is attached as part of the **Marmich/Trane Claim**, **Composite Exhibit A-4, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

### Johnson Controls Claim - Tree Tops Project - Bond 7945

27.      On August 16, 2016, Johnson Controls Inc. ("Johnson Controls"), entered into a contract as a subcontractor to furnish services and HVAC materials to Pioneer Construction on the Tree Tops Project.   A copy is attached as part of the **Johnson Tree Tops Claim, Composite Exhibit A-5, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

28.      On October 25, 2017, Johnson Controls provided Westchester with a Payment Bond Claim Notice, notifying Surety, that Pioneer Construction owed a total of $81,582.00 for the services and materials Johnson Controls had provided in the Tree Top Project (hereafter "Johnson Tree Tops Claim"). A copy is attached as part of the Johnson Tree Tops Claim, **Composite Exhibit A-5, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**   On November 15, 2017, Johnson Controls provided Westchester with a Proof of Claim for the Johnson Tree Top Claim.   A copy is attached as part of **Johnson Tree Tops Claim, Composite Exhibit A-5, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

29.      After conducting an investigation as to the legitimacy of the claim, Surety determined the claim was valid and paid the Johnson Tree Tops Claim in the amount of

$81,582.00.  A copy is attached hereto as part of **Johnson Tree Tops Claim**, **Composite Exhibit A-5, to Affidavit of Melissa Rice, attached hereto as Exhibit A**.   Accordingly, Johnson Controls executed a Final Waiver, Lien Release and Assignment, Contingent Upon Payment In the Amount of $81,582.00.  A copy is attached as part of the **Johnson Tree Tops Claim**, **Composite Exhibit A-5, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

**Johnson Claim- Judicial Tower Project – Bond 7945**

30.     Johnson Controls, under a separate contract dated March 11, 2016, furnished HVAC equipment and services as a subcontractor to Pioneer Construction on the Judicial Tower Project. A copy is attached as part of the **Johnson Judicial Tower Claim, Composite Exhibit A-6, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

31.     On November 8, 2017, Johnson Controls submitted a Notice of Nonpayment to Westchester, dated November 7, 2016 ("Johnson Judicial Tower Claim"). The notice, addressed to both Pioneer Construction and Westchester, claimed that Johnson Controls had furnished labor and materials on the Judicial Tower Project at the request of Pioneer Construction and had not been paid in full and the amount due and owing was $32,504.50. A copy is attached as part of the **Johnson Judicial Tower Claim**, **Composite Exhibit A-6, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

32.     On or around December 7, 2017, Johnson Controls submitted a proof of claim to Chubb, as Westchester's claims adjuster, alleging Pioneer Construction owed it a total of $32,504.50. A copy is attached as part of the **Johnson Judicial Tower Claim, Composite Exhibit A-6, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

33.     After conducting an investigation as to the legitimacy of the claim, Surety paid the Johnson Judicial Tower Claim in the amount of $32,504.50.  A true and accurate copy of Surety payment is attached as part of the **Johnson Judicial Tower Claim**, **Composite Exhibit A-6, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

34.     Accordingly, Surety obtained a Final Waiver, Lien Release and Assignment, Contingent Upon Payment in the Amount of $32,504.50 (hereafter, "Johnson Controls Broward Judicial Tower Release").  A copy of which is attached as part of the Johnson Judicial Tower Claim, **Composite Exhibit A-6, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

### Daikin Claim - Hollywood Library Project – Bond No. 7945

35.     On or about April 3, 2017, Pioneer Construction, issued a purchase order to Daikin Applied Americas Inc. ("Daikin") for HVAC equipment in the amount of $89,040.00, for the Hollywood Library Project. On May 2, 2017, Daikin issued an invoice for $25,000.00 prior to shipment of the chiller to Pioneer Construction and on or about June 9, 2017, Pioneer Construction paid Daikin $25,000.00 prior to shipment. A copy of the purchase order and invoice and check are attached hereto as part of the **Daikin Claim, Composite Exhibit A-7, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

36.     On or about August 14, 2017, Daikin furnished HVAC equipment (a chiller) for the Hollywood Library Project at the request of Pioneer Construction.  A copy of the proof of delivery is attached as part of the **Daikin Claim**, **Composite Exhibit A-7, to Affidavit of Melissa Rice, attached hereto as Exhibit A**.

37.     On October 23, 2017, Daikin executed a Notice of Nonpayment, Notice of Claim Against Contractor's Payment Bond claiming it had not been paid in full for

11

materials furnished for the Hollywood Library Project in the amount of $63,895.89 ("Daikin Claim").   And on January 29, 2018, Daikin submitted a Proof of Claim to Westchester and Chubb seeking reimbursement for the outstanding balance due and owing from Pioneer Construction in the amount of $63,895.89. Copies of the Notice of Claim and Proof of Claim are attached hereto as part of the **Daikin Claim, Composite Exhibit A-7, to Affidavit of Melissa Rice, attached hereto as Exhibit A**.

**Westchester Demand for Collateral, Payment, and Indemnification**

38.     On September 21, 2017, Chubb, seeking indemnification on behalf of Westchester, and pursuant to the terms of the Indemnity Agreement, sent a letter to Pioneer Construction and Miles seeking reimbursement for the amounts paid to Marmich ( a total of $32,691.52) and Trane (a total of $17,736.07).  A copy is attached as **Exhibit A-8, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

39.     Similarly, on December 19, 2017, Chubb, on behalf of Westchester, seeking indemnification under the terms of the Indemnity Agreement, notified Pioneer Construction and Miles that it was in receipt of several bond claims including: (1)  the Johnson Tree Tops Claim in the amount of $81,582.00; (2)  the Johnson Judicial Tower Claim in the amount of  $32,504.50; (3) the Marmich Claim, which included the Trane Claim for a combined total of $50,427.59, and requesting payment thereon.  A copy of the December 19, 2017 letter is attached as **Exhibit A-9, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

40.     On May 14, 2018, Westchester through its undersigned counsel issued a Demand for Indemnity and Collateral pursuant to the terms of the Indemnity Agreement. See **Exhibit A-10, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

41.     On June 1, 2018, Westchester through its undersigned counsel sent Pioneer a Demand for Payment of the Daikin Claim.  See **Exhibit A-11, to Affidavit of Melissa Rice, attached hereto as Exhibit A.**

42.     Under the terms of the Bonds, Westchester has incurred an obligation to pay the Claims. Furthermore, it has discharged all Claims except for the Daikin Claim which to date remains unpaid.

43.     Westchester has made repeated attempts to contact Pioneer Construction, and Miles, to assess the situation, to which the Indemnitors have not adequately responded. To date, neither Pioneer Construction nor Miles has indemnified Westchester for the claim losses it has incurred for a total of $228,409.98.

44.     Indemnitors' failure to indemnify Westchester for its losses constitutes a material breach of the Indemnity Agreement.

45.     In addition to direct claim losses, Westchester continues to suffer losses under the Bonds in the form of loss-adjusting expenses, attorneys' fees in the amount of $29,674.00, and consultancy fees in pursuing the enforcement of the parties joint and several obligations under the Indemnity Agreement.

46.      Westchester reasonably expects further losses to continue.

47.     Moreover, each of the Indemnitors materially breached and defaulted upon their obligations under the Indemnity Agreement by failing or refusing to indemnify and reimburse the Surety for the claims paid and by failing or refusing to indemnify and reimburse the Surety for its loss adjusting expenses, attorneys' fees and consultancy fees.

48.     In sum, the Indemnitors, joint and severally, owe the Surety the principal amount of $228,409.98, for incurred claim losses, and for allocated expenses for consulting

and legal representation, to date in the amount of $29,674.00, loss-adjustment expenses, and pre-judgement interest.

49.     The Indemnitors, jointly and severally, also owe the Surety for any and all losses, costs, expenses, and attorneys' fees, incurred as a result of filing this action.

## COUNT I – BREACH OF INDEMNITY AGREEMENT

50.     Westchester realleges and incorporates by reference Paragraphs 1 through 49, as if fully set forth herein.

51.     As stated above, the Indemnitors, entered into an Indemnity Agreement with Westchester on February 17, 2012.

52.     The Indemnity Agreement provides that the Indemnitors, jointly and severally, will indemnify and hold Westchester, harmless for any and all liability, and for any and all losses incurred as a result of the issuance of the Bonds.

53.     The Indemnitors materially breached the Indemnity Agreement by failing to perform under the terms of the agreement, including by (1) failing to pay its subcontractors for material and labor furnished as part of the construction projects; (2) failing to indemnify and hold Westchester harmless for the losses it has sustained, in the discharge of its obligations as surety, with regard to the claims made against the Bonds; (3) failing, delaying, refusing, or being unable to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a bond.

54.     Westchester has performed all conditions to be performed on its part under the Bonds and under the Indemnity Agreement.

55.     As a direct result of the Indemnitors' breach of the Indemnity Agreement, Westchester has been damaged incurring substantial costs, including court costs, expenses,

and attorneys' fees to date in the amount of $29,674.00.

WHEREFORE, Westchester Fire Insurance Company, respectfully requests that this Court enter an order awarding Westchester Fire Insurance Company (1) damages, costs, expenses, pre-judgement interest, attorneys' fees and costs; and (2) request that the Court order any such further relief the Court deems just and proper.

### COUNT II – COMMON LAW INDEMNITY/REIMBURSEMENT

56.     Westchester realleges and incorporates by reference Paragraphs 1 through 49, as if fully set forth herein.

57.     A special relationship exists between Pioneer Construction, as the principal and primary obligor under the Bond, and Westchester, as Pioneer Construction's surety, and the secondary obligor under the Bonds.

58.     Westchester, the party seeking indemnification, is without fault and has performed its obligations under the Bonds, for which Pioneer Construction is primarily responsible, by making payments to all valid bond claimants after Pioneer Construction defaulted under the terms of the Bonds.

59.     Westchester's liability for the payments on all valid bond claims is vicarious and solely due to the wrongful conduct of Pioneer Construction defaulting and failing to make such payments.

60.     Westchester has suffered a direct and proximate loss and is entitled to have Pioneer Construction reimburse Westchester for these losses incurred in the performance of Pioneer Construction's obligations.

WHEREFORE, Westchester Fire Insurance Company respectfully requests entry of an order awarding Westchester Fire Insurance Company  (1) damages, costs, expenses,

15

pre-judgement interest, attorneys' fees and any other costs whatsoever relating to performing the bonded obligations or losses, expenses and other obligations in connection with the Project for which Westchester Insurance Company is or may be liable under the Bond; (3) attorneys' fees and costs; and (4) request that the Court order any such further relief the Court deems just and proper.

### COUNT III – EXONERATION

61.     Westchester Insurance Company realleges and incorporates by reference Paragraphs 1 through 49, as if fully set forth herein.

62.     This is an action for exoneration seeking equitable relief.

63.     Pursuant to the terms of the Indemnity Agreement and the doctrine of equitable exoneration, Westchester is entitled to be exonerated by Pioneer Construction from all losses, costs, and expenses, associated with Westchester's payments on the Bonds, including, but not limited to, court costs, fees and expenses of attorneys and adjusters, expenses for procuring or attempting to procure releases from liability under the Bonds, and expenses incurred to enforce the Indemnity Agreement, sustained as a result of issuing the Bonds to Pioneer Construction and pursuing its right of indemnification.

64.     The losses, costs, and expenses have become fixed and are due.

65.     Pioneer Construction is liable for payment of the losses, costs, and expenses.

66.     In the absence of the equitable relief sought herein, Westchester will not be adequately secured for any obligations that have arisen and may arise hereafter under the Bonds, as a result of Pioneer Construction's breaches of the Indemnity Agreement, all to the prejudice and irreparable harm of Westchester. Without adequate security, Westchester

will be prejudiced because it will be required to advance further funds in connection with claims on the Bonds.

67.    Westchester seeks entry of a judgment requiring Pioneer Construction to fully exonerate Westchester from such losses, costs, and expenses.

WHEREFORE, Westchester Fire Insurance Company respectfully requests that the Court enter an order requiring Pioneer Construction Company to (1) immediately post collateral with Westchester, or otherwise place Westchester in funds, for losses, expenses and other obligations in connection with the Projects for which Westchester is, or may be liable, under the Bonds; and (2) pay attorneys' fees and costs. Westchester Fire Insurance Company further requests any such relief the Court deems just and proper.

## COUNT IV – SPECIFIC PERFORMANCE – RESERVE DEPOSIT

68.    Westchester realleges and incorporates by reference Paragraphs 1 through 49, as if fully set forth herein.

69.    This is an equitable claim for specific performance to compel performance of an agreement or contract on the precise terms agreed upon.

70.    Pursuant to the Agreement, Paragraph 4 Reserve Deposit, Indemnitors agreed that upon demand by Westchester, they would be required to establish a reserve to cover any possible liability of loss for which the Indemnitors would be obligated to indemnify Westchester under the terms of the Agreement.

71.    Westchester has made demand on Indemnitors to post collateral pursuant to the Indemnity Agreement to guarantee the faithful performance of Indemnitors' obligations.

72.     Despite such demand, Indemnitors have failed to satisfy their obligations under the Indemnity Agreement by refusing to post funds with Westchester, sufficient to cover the losses and expenses incurred or expected to be incurred by Westchester.  Unless the assets of Indemnitors are provided to Westchester as collateral, Westchester will not be adequately paid, secured or collateralized for potential obligations prior to making any necessary and appropriate payments.

73.     By the express provisions of the Indemnity Agreement, Westchester is entitled to be placed in funds or other collateral security by the Indemnitors upon demand, in an amount that is sufficient to cover all losses and expenses to be incurred as a consequence of its issuance of the Bond.

74.     Further the Indemnity Agreement provides that it constitutes a Security Agreement and A Financing Statement for the benefit of Surety in accordance with the Uniform Commercial Code ….  Para. 10, Indemnity Agreement, **Exhibit A-1, to Affidavit of Melissa Rice, attached hereto as Exhibit A**.

75.     In the absence of the equitable relief sought herein, Westchester may not be adequately secured for any obligations that have arisen and may arise hereafter under the Bonds and as a result of Indemnitors' breaches of the Indemnity Agreement, all to the prejudice and irreparable harm of Westchester. Without adequate security, Westchester will be prejudiced because it will be required to advance further funds in connection with claims on the Bonds.

76.     Unless temporary and continuing injunctive relief is granted, Westchester is fearful and apprehensive that Indemnitors (a) are or will become financially unable to pay any amounts that may be found owing for which Westchester may be liable and

Westchester's related expenses (including attorneys' fees); or (b) will sell, transfer, dispose or, otherwise, conceal their assets based upon the refusal to secure Westchester in accordance with its demands

77.     Unless the relief in the nature herein requested or its equivalent is granted, Westchester's equitable right of indemnification will be forever lost, depriving Westchester of adequate security for its obligation to make payments to the obligees and claimants under the Bonds or, unless the equitable relief requested below is granted, Indemnitors are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge Indemnitors' obligation to hold harmless or exonerate Westchester.

WHEREFORE, Westchester Fire Insurance Company respectfully requests that this Court order the Indemnitors (1) to immediately post collateral with Westchester or otherwise place Westchester Fire Insurance Company in funds for anticipated losses, expenses and other obligations in connection with the Project for which Westchester Fire Insurance Company is or may be liable under the Bonds; and (2) pay attorneys' fees and costs. Westchester further requests any such relief the Court deems just and proper.

### COUNT V – QUIA TIMET

78.     Westchester realleges and incorporates by reference Paragraphs 1 through 49, as if fully set forth herein.

79.     This is an action for *quia timet* seeking equitable relief.

80.     Westchester has a common law right to require Pioneer Construction to post collateral to avoid depletion of Pioneer Construction's assets to the detriment of Westchester, and to ensure faithful performance of Pioneer Construction's obligations.

81.     Westchester has been and will continue to be called upon in the near future to pay debts and other expenses relating to the Bonds, the exact amount of which has yet to be determined.

82.     The debt includes claims made on the Bonds by payment bond claimants or potential claimants.

83.     Pioneer Construction is obligated under the doctrine of *quia timet* to collateralize Westchester for all losses and expenses that Westchester fears or apprehends will be incurred as a consequence of having issued the Bonds.

84.     Westchester has made demand on Pioneer Construction to post collateral to guarantee the faithful performance of its obligations.  Despite such demand, Pioneer Construction has failed and refused to post collateral.

85.     In the absence of the equitable relief sought herein, Westchester will not be adequately secured for any obligations that have arisen and may arise hereafter under the Bonds and as a result of Pioneer Construction's breaches of the Indemnity Agreement, all to the prejudice and irreparable harm of Westchester. Without adequate security, Westchester will be prejudiced because it will be required to advance further funds in connection with claims on the Bonds.

86.     Unless temporary and continuing injunctive relief is granted, Westchester is fearful and apprehensive that Pioneer Construction: (a) is or will become financially unable to pay any amounts that may be found owing for which Westchester may be liable and Westchester's related expenses (including attorneys' fees); or (b) will sell, transfer, dispose or, otherwise, conceal their assets based upon the refusal to secure Westchester in accordance with its demands.

87.     Unless the relief in the nature herein requested, or its equivalent is granted, equitable right of *quia timet* and indemnification will be forever lost, depriving Westchester of adequate security for its obligation to make payments to the obligees and claimants under the Bonds.

88.     Unless the equitable relief requested below is granted, Indemnitors are likely to sell, transfer, dispose, lien, secure, or otherwise divert their assets from being used to discharge Indemnitors' obligation to hold harmless or exonerate Westchester.

89.     Westchester seeks an order requiring Pioneer Construction to post collateral to avoid depletion of its assets and to ensure faithful performance of its obligations.

WHEREFORE, Westchester Fire Insurance Company respectfully requests that the Court enter an order Pioneer Construction: (1) to immediately post collateral with Westchester Fire Insurance Company or otherwise place Westchester Fire Insurance Company in funds for anticipated losses, expenses and other obligations in connection with the Project for which Westchester Fire Insurance Company is or may be liable under the Bonds; and (2) pay attorneys' fees and costs. Westchester Fire Insurance Company further requests any such relief the Court deems just and proper.

## COUNT VI – RECOVERY OF ATTORNEYS' FEES AND EXPENSES

90. Westchester realleges and incorporates by reference Paragraphs 1 through 49, as if fully set forth herein.

91. Surety is entitled to recover its attorneys' fees, costs and expenses from the Indemnitors under the terms of the Indemnity Agreement and Bonds. To date such fees total $29,674.00.

WHEREFORE, Plaintiff, Westchester Fire Insurance Company, respectfully requests entry of an order awarding it, damages, costs, expenses, pre-judgement interest, attorneys' fees and costs, and order any such further relief the Court deems just and proper.

Dated: July 3, 2018

Respectfully submitted,

*/s/Jonathan P. Cohen*
Jonathan P. Cohen,
FBN:11526
jcohen@jcohenpa.com
Jonathan P. Cohen P.A.
500 E. Broward Blvd., Suite 1710
Fort Lauderdale, FL 33394
Tel. (954) 462-8850
Fax. (954) 848-2987
service@jcohenpa.com
**Attorneys for Plaintiff**
**Westchester Fire Insurance Company**
service@jcohenpa.com